SCOTT N. SCHOOLS (SC 9990)
United States Attorney

W. DOUGLAS SPRAGUE (CSBN 202121)
Acting Chief, Criminal Division

ANDREW P. CAPUTO (CSBN 203655)
TRACIE L. BROWN (CSBN 188349)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7004
   FAX: (415) 436-7234
   Email: andrew.caputo@usdoj.gov
   Email: tracie.brown@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-0371 MJJ |
|     Plaintiff, | UNITED STATES' MOTION IN LIMINE CONCERNING INEXTRICABLY INTERTWINED EVIDENCE AND OTHER ACTS |
|     v. | |
| FREDERICK LIM JOHNSON, | Date: August 9, 2007 |
|     Defendant. | Time: 3:00 p.m. |

**I.  NOTICE OF MOTION**

The United States respectfully moves in limine for an order allowing it to introduce certain evidence relevant to the question of defendant Frederick Lim Johnson's possession of the firearm charged in the indictment. The evidence in question falls into two categories. First, the government seeks to introduce evidence of defendant's movements in and around the Wells Fargo Bank parking lot in Sunnyvale during the week prior to his arrest. This evidence is admissible because it is inextricably intertwined with the facts of this case and is essential to explain the context of the case. In the alternative, it is admissible under Federal Rule of

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ

Evidence 404(b). Second, the government seeks to introduce evidence concerning the methods defendant used to commit a series of bank robberies approximately five years ago. Evidence about these prior bank robberies is admissible under Rule 404(b) because it is probative of identity, among other things.

## II. FACTS

A group of men robbed eight Bay Area banks between February 24 and May 14 of this year. Multiple men entered each bank with their faces usually concealed behind costume masks. The men were armed with guns. One robber controlled the lobby while the remaining robber or robbers vaulted the teller counter and took money from teller drawers.

Based on information they obtained, Federal Bureau of Investigation ("FBI") agents suspected defendant Frederick Lim Johnson of involvement in the robberies. On or about May 21, they began surveilling Johnson. On May 25, agents observed Johnson as he drove to and around numerous banks in Milpitas, San Jose, and Sunnyvale. Johnson's pattern of movements led the agents to believe he was scouting the banks for robbery. The next day, Johnson visited three different banks, including the Wells Fargo Bank located at 1202 East Arques Avenue in Sunnyvale ("the Wells Fargo Bank"). Johnson visited the Wells Fargo Bank again subsequently. Each time he moved about in a manner consistent with scouting the bank for robbery. During his visits, the agents did not see him use an ATM machine or enter the bank to undertake a transaction. Instead, on various visits, he entered the bank parking lot, drove around the lot, approached the bank entrances by car, stopped or parked, and drove away from the bank through adjoining parking lots.

On May 30, Johnson drove to Sunnyvale from his home in Redwood City. As he neared the area of the Wells Fargo Bank he previously had scouted, he entered a parking lot on Titan Way which is located approximately 200 yards from the bank. A white sport utility vehicle ("SUV"), which the agents had observed driving in tandem with Johnson and which was driven by Edward Kang, entered the same parking lot. Johnson parked his car in the Titan Way lot with the nose of the car facing out, then got out of his car. He walked across the parking lot, carrying a brown tote bag, and entered Kang's SUV. Kang then drove to the nearby Wells Fargo Bank

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ                             2

1  that Johnson had appeared to case in previous days.  During this drive, Johnson was seen putting
2  on a hooded sweatshirt.  Kang and Johnson drove into the Wells Fargo Bank parking lot, drove
3  around the lot, then subsequently drove out.  Minutes later they returned to the same bank
4  parking lot and drove around the lot again.  They stopped for several moments at the bank's
5  entrance, drove back around the lot again, and then left the bank parking lot for the second time.
6  They then proceeded back to the Titan Way parking lot and parked a few spaces away from
7  where Johnson had left his car.  At this point, the FBI stopped the vehicle and ordered Johnson
8  and Kang out of the SUV.  On the front passenger floorboard, at the feet of where Johnson had
9  just been sitting, the agents found the brown tote bag.  It contained a loaded .380 semi-automatic
10 handgun, a flesh-colored face mask, a pair of Nike batting gloves, and a dark blue knit cap – in
11 other words, a bank robbery kit.  The contents of the bag are depicted in Exhibits B and C to the
12 Declaration of Brian J. Guy.
13     In 2003, Johnson pled guilty to seven counts of armed bank robbery.  He was interviewed
14 by the FBI and spoke in detail with Special Agent Derek Price about the methods he used to rob
15 those banks.  His methods included carrying guns and wearing plastic face masks, which he
16 would purchase from a costume store.  The type of mask used in those earlier robberies is
17 depicted in Exhibit A to the Declaration of Brian J. Guy.
18     After Johnson was arrested on May 30, 2007, FBI agents executed a search warrant at his
19 apartment.  In his apartment, they found a flesh-colored face mask identical to the one found in
20 the brown tote bag in the SUV.  The mask in the apartment was found in a bag which also
21 contained a receipt from a local costume store consistent with the purchase of two masks less
22 than a week earlier.

### III. ARGUMENT

A.  <u>Johnson's Movements in the Week Prior to His Arrest are Inextricably Intertwined With the Charged Offense and Should Be Admitted into Evidence.</u>

The Court should admit evidence about Johnson's movements during the week prior to his arrest, because they are inextricably intertwined with the charged offense.  These movements supply necessary context for the FBI's stopping of the SUV and its discovery, at Johnson's feet,

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ                              3

of a bank robbery kit containing a loaded firearm. From Johnson's movements in the days leading up to May 30, a jury could conclude that he was casing the Wells Fargo Bank for robbery. The evidence of these movements in the area of the bank is relevant to the question of whether Johnson – as opposed to Kang or anyone else – possessed, at the time of his arrest, the bag containing a gun, a mask, gloves, and a cap – all items that are useful for robbing a bank.

The Ninth Circuit recognizes two categories of evidence that should be considered "inextricably intertwined" with a charged offense and therefore admitted without regard to Federal Rule of Evidence 404(b). The first category is evidence that "constitutes a part of the transaction that serves as the basis for the criminal charge." United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004). The second category is evidence necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." Id. Evidence of Johnson's movements in the days before and on the day of his arrest falls into both of these categories and thus should be admitted as inextricably intertwined with the charged crime.

Johnson's multiple visits to the Wells Fargo Bank and his possession of a gun on May 30 were all part of one unbroken transaction or process. From the evidence the government seeks to introduce, a jury could conclude that Johnson cased the bank on multiple occasions to prepare for its robbery. A jury could also conclude that, when Johnson went back to Sunnyvale on May 30, he brought with him his gun (in his bank robbery kit) so he could rob the bank he had cased in previous days. Since these acts constitute pieces of the same process, the evidence of Johnson's movements should be admitted as inextricably intertwined with the evidence about the discovery of the gun in the bag at Johnson's feet.

The evidence of Johnson's movements equally qualifies for admission as part of the second "inextricably intertwined" category of evidence, since that evidence is necessary to provide context about how and why Johnson and the FBI agents came to be in Sunnyvale on May 30. It also is necessary to allow the government to tell a coherent story about how the crime alleged in the indictment came about. The Ninth Circuit has stressed that, in prosecuting a felon-in-possession case, the government is entitled to present evidence about how and why the felon

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ                                                      4

1  came to be in possession of the weapon:

2  > The prosecution is not restricted to proving in a vacuum the offense of possession of a firearm by a felon: "A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge."

5  United States v. Daly, 974 F.2d 1215, 1217 (9th Cir. 1992) (quoting United States v. Moore, 735

6  F.2d 289, 292 (8th Cir. 1984)). Daly was a felon-in-possession case in which the Ninth Circuit

7  affirmed the district court's admission of evidence of an 11-hour shoot-out that Daly allegedly

8  had with police officers at the time he was alleged to have possessed the firearm. The court

9  reasoned that "evidence regarding the shootout was necessary to put Daly's illegal conduct into

10 context and to rebut his claims of self-defense." Id. Thus, the "shoot-out evidence was

11 sufficiently intertwined with the evidence regarding the possession charge" as to be admissible in

12 the felon-in-possession case. Id. By the same token, evidence of Johnson's movements in the

13 area of the Wells Fargo Bank is necessary to put his alleged illegal conduct into context by

14 explaining why he possessed a gun that day.

15 The Ninth Circuit has further elaborated on the circumstances in which evidence is

16 admissible in order to "provid[e] the context in which the charged crime occurred." United

17 States v. Collins, 90 F.3d 1420, 1428 (9th Cir. 1996). The court has explained that such evidence

18 most often is admitted "in felon-in-possession cases because of the difficulty that the prosecution

19 would encounter in proving that the defendant possessed a gun and in rebutting his proffered

20 defense without relating the facts surrounding the commission of the crime." Id. at 1428-29.

21 Collins was a felon-in-possession case in which the prosecution argued that the defendant had a

22 gun in order to commit a burglary. Collins countered that he was in the neighborhood merely to

23 go dancing. The Ninth Circuit held that the district court had properly admitted evidence of a

24 prior burglary in order to assist the jury in weighing the merits of these arguments. "Had the

25 government not introduced the rebuttal testimony, the jury would have been left wondering why

26 Collins would have wanted a gun. The government's evidence provided an answer: he was

27 acting as the lookout for a burglary." Id. at 1429. This reasoning applies with equal force to the

28 instant case. Without evidence about Johnson's movements in the area of the bank, the jury

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ                                    5

1  would be left wondering why Johnson would have wanted a gun.  With that evidence, the jury
2  would have an explanation (which it could choose to accept or not): that Johnson had a gun
3  because he was preparing to rob the bank he previously had scouted.
4        Johnson's movements in the days leading up to May 30 are inextricably intertwined with
5  the agents' discovery of a gun near his feet on May 30.  Those movements are necessary to give
6  context to the act of possession charged in the indictment.  As such, evidence of Johnson's
7  movements is properly admissible here.
8  B.    In the Alternative, Johnson's Movements are Admissible Under Rule 404(b).
9        Johnson's movements in the area of the Wells Fargo Bank are also admissible under
10  Federal Rule of Evidence 404(b) as proof of motive, plan, preparation, and identity.  From
11  Johnson's movements in Sunnyvale, a jury could conclude that Johnson was preparing and
12  planning to rob the Wells Fargo Bank.  That agenda would give Johnson a motive to possess the
13  firearm charged in the indictment.  Johnson's casing of the bank also is evidence of the identity
14  of the individual who possessed the gun found in the SUV on May 30, since it was Johnson (and
15  not Kang or anyone else) who cased the bank during the previous days.
16        The Ninth Circuit uses a four-part test to determine whether evidence is admissible under
17  Rule 404(b).  First, the evidence must be offered to prove a material element of the offense for
18  which the defendant is now charged.  Second, in certain cases the prior conduct must be similar
19  to the charged conduct.  Third, there must be sufficient evidence of the prior conduct.  And
20  fourth, the prior conduct must not be too remote in time.  See, e.g., United States v. Howell, 231
21  F.3d 615, 628 (9th Cir. 2000); United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.
22  1993).  When these four elements are satisfied, the court then balances the probative value of the
23  evidence against any prejudicial effect.  Howell, 231 F.3d at 629; Arambula-Ruiz, 987 F.2d at
24  604.  To be excluded under Rule 403, the evidence must be unfairly prejudicial and must
25  substantially outweigh the probative value of the evidence.  See Fed. R. Evid. 403; see also
26  Arambula-Ruiz, 987 F.2d at 604.  The law is clear that Rule 404(b) is a rule of inclusion.  United
27  States v. Jackson, 84 F.3d 1154, 1159 (9th Cir. 1996).
28        Under these tests, Johnson's movements should be admitted into evidence under Rule

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ                                    6

404(b).

1. <u>Materiality</u>.

The evidence of Johnson's movements is material to proving possession of the firearm, one of the elements of the charged crime. It shows that Johnson had prepared and planned to rob the Wells Fargo Bank (an act for which possessing a gun would be very useful), that he had a motive to carry the gun (in light of his scoutings of the bank), and that it was Johnson who possessed the gun, since it was Johnson who scouted the banks..

2. <u>Similarity.</u>

Similarity between the charged and the prior conduct is not required where the prior conduct is offered to prove motive, plan, or preparation. <u>United States v. Vizcarra-Martinez</u>, 66 F.3d 1006, 1014 n.5 (9th Cir. 1995). Sufficient similarity to the charged offense is required where prior conduct is required to show proof of identity. <u>United States v. Miller</u>, 874 F.2d 1255, 1269 (9th Cir. 1989). Here, the close contextual nexus between Johnson's arrest on May 30 (with a gun at his feet) and his movements in the area on previous days means there is sufficient similarity to admit the evidence of his movements as proof of identity on the issue of possession.

3. <u>Sufficient Evidence of Prior Conduct.</u>

If the Court admits the evidence of Johnson's movements, the United States will introduce that evidence through testimony of FBI agents who observed the movements, which constitutes sufficient evidence of the prior conduct.

4. <u>Not Too Remote in Time.</u>

The movements of Johnson at issue in this motion occurred on the day of the charged firearm possession and during the prior week. They are not too far removed in time from the charged offense.

5. <u>The Probative Value of the Evidence Merits Its Admission.</u>

Johnson's movements are probative of his possession of the gun, and there is no unfair prejudice that outweighs that prejudice. Evidence of the movements thus should be admitted under Rule 404(b).

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ                                              7

C.  Johnson's Previous Method of Robbing Banks is Admissible Under Rule 404(b) in Order to Prove Identity.

The United States also moves this Court for an order admitting evidence of the methods Johnson used to rob banks between 2001 and 2003, as such evidence is probative of identity under section 404(b). Specifically, the government seeks to have Special Agent Price testify about how Johnson purchased plastic masks from a costume store and used the masks to rob Bay Area banks between 2001 and 2003. The government also would introduce one or more surveillance photographs from the 2001-2003 robberies, such as the photograph attached as Exhibit A to the Declaration of Brian J. Guy, to show what the masks looked like. This evidence of Johnson's prior bank robbery methods is proof of Johnson's identity as the possessor of the gun charged in the indictment, since the gun was found in a bank robbery kit that also included a mask of the type Johnson previously used to rob banks. A jury could believe that this distinctive mask identifies the bank robbery kit as Johnson's.

The tests for admission of 404(b) evidence support admission of this evidence about Johnson's prior method of robbing banks.

1. Materiality.

The evidence of Johnson's past use of masks is material to the question of Johnson's possession of the charged firearm, since the firearm was found in a bag that included a mask like the kind Johnson previously used in order to rob banks.

2. Similarity.

The mask that was found in the bag with the gun is of the same type Johnson previously used to rob banks, and it was purchased from the same type of store from which Johnson previously purchased his bank robbery masks. Thus, there not only is a similarity between the past and the recent conduct – there is a near identity.

3. Sufficient Evidence of Prior Conduct.

The government would introduce its evidence of Johnson's previous use of plastic masks by way of testimony from Special Agent Price, who conducted a detailed interview of Johnson in 2003 about his methods of robbing banks in 2001-2003. Agent Price would testify that Johnson

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ                            8

1  described purchasing plastic masks from a year-round costume store and using those masks to
2  rob banks. Along with the surveillance photographs from the earlier robberies, this is sufficient
3  evidence to show Johnson's prior conduct.

4       4.     Not Too Remote in Time.

5  The prior conduct about which Agent Price would testify occurred approximately five
6  years ago. That is not too remote in time from the charged conduct, especially since Johnson was
7  not released from Bureau of Prisons custody on his prior bank robbery conviction until January
8  12, 2007, as shown by the Bureau of Prisons website at bop.gov.

9       5.     The Probative Value of the Evidence Merits Its Admission.

10  Johnson's prior use of the same type of mask found with the firearm charged in the
11  indictment is strong evidence that Johnson possessed not just the mask but also the firearm found
12  with it. The probative value of the evidence of this prior conduct warrants its admission and is
13  not outweighed by unfair prejudicial impact.

14  In United States v. Luna, 21 F.3d 874 (9th Cir. 1994), a bank robbery case, the Ninth
15  Circuit rejected under Rule 404(b) the admission of certain evidence from two uncharged bank
16  robberies. The evidence was offered for purposes of identity, but the Ninth Circuit held that the
17  generic quality of the robbery techniques at issue in Luna barred admission of the evidence. Id.
18  at 882. The differences between the robbery techniques at issue in Luna and the robbery methods
19  at issue in the instant case show why a different result should occur here. In Luna, the defendants
20  used varying types of masks, from nylon masks to ski masks. Id. at 880. Here, by contrast, both
21  the past and current conduct used the same type of costume mask, which was purchased on both
22  occasions from a specialized costume store. The close identity among these masks is enhanced
23  by the Halloween-type mask involved here, which is different from the far more common and
24  generic types of masks at issue in Luna. The Luna court noted that "[p]erhaps if the robbers had
25  used identical kinds of masks, gloves, and bags in every crime, the government would have come
26  closer to proving a distinctive quality running through all four robberies" and would have
27  justified admission of the other-acts evidence under Rule 404(b). Id. at 881 n.5. Ours is the type
28  of different case alluded to by the Luna court and warrants a different result than in Luna.

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ                      9

1    Our case is much less like Luna than it is like United States v. Morgan, 936 F.2d 1561,
2  1571-73 (10th Cir. 1991), where the Tenth Circuit upheld admission of 404(b) evidence about
3  prior bank robberies for purposes of identity.  In Morgan, the bank robbers in both the charged
4  and the prior bank robberies wore unusual masks made out of sweat pants.  Id. at 1572.  Since the
5  unusual masks at issue in Morgan are akin to the unusual masks at issue here, the Tenth Circuit's
6  holding in Morgan supports admission of Agent Price's testimony at trial in the instant case.  See
7  also United States v. Jackson, 84 F.3d 1154, 1159 (9th Cir. 1996) ("unless the evidence of other
8  crimes tends only to prove propensity, it is admissible"); United States v. Rocha, 553 F.2d 615,
9  616 (9th Cir. 1977) (evidence of prior bad acts is admissible "except where it tends to prove only
10 criminal disposition") (emphasis in original).

### IV.  CONCLUSION

12    For the foregoing reasons, the United States respectfully requests an order admitting the
13 evidence of Johnson's movements in Sunnyvale and the evidence of Johnson's previous methods
14 of robbing banks.

15 DATED: August 3, 2007                    Respectfully submitted,

16                                          SCOTT N. SCHOOLS
                                            United States Attorney
17

18
                                            _____/s/_____
19                                          ANDREW P. CAPUTO
                                            TRACIE L. BROWN
20                                          Assistant United States Attorneys

UNITED STATES' MOTION IN LIMINE
CR 07-0371 MJJ                                      10