1  SCOTT N. SCHOOLS (SC 9990)
   United States Attorney

2  BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  ANDREW P. CAPUTO (CSBN 203655)
   TRACIE L. BROWN (CSBN 184339)
5  Assistant United States Attorneys

6    450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102
7    Telephone: (415) 436-7004
     Facsimile: (415) 436-7234
8    E-Mail: andrew.caputo@usdoj.gov
     E-mail: tracie.brown@usdoj.gov
9
   Attorneys for Plaintiff
10

11                UNITED STATES DISTRICT COURT
12                NORTHERN DISTRICT OF CALIFORNIA
13                   SAN FRANCISCO DIVISION

14

| UNITED STATES OF AMERICA, | ) | No. CR 07-0371 MJJ |
|---|---|---|
| Plaintiff, | ) | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL |
| v. | ) | |
| FREDERICK LIM JOHNSON, | ) | Date: November 1, 2007 |
| Defendants. | ) | Time: 2:00 p.m. |

       Defendant Frederick Lim Johnson has filed a motion for judgment of acquittal or for a new trial. He argues that certain evidence was improperly admitted or, in the alternative, that defendant's counsel was ineffective by opening the door to admission of that evidence. He also claims that a witness's brief reference to hollow-point bullets was sufficiently prejudicial to warrant a new trial. Finally, he claims generally that the record contains insufficient evidence to support a guilty verdict. The United States respectfully asks the Court to deny defendant's motion in all respects.

U.S. OPP. TO MOT. FOR ACQUITTAL OR FOR NEW TRIAL
CR 07-0371 MJJ

**FACTS**

A.   Pretrial Proceedings

A grand jury charged defendant with a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. section 922(g)(1).

The Federal Bureau of Investigation ("FBI") had surveilled defendant prior to his arrest. At the pretrial conference, the parties disputed how much of this surveillance evidence should be admitted. The Court admitted the surveillance evidence of defendant's visits to the Wells Fargo Bank in Sunnyvale, which began on May 26, 2007, but excluded, under Rule 403, the surveillance evidence of defendant's visits to numerous other banks on May 25. Defendant also sought to exclude a handwritten list of bank addresses found in defendant's apartment when it was searched after his arrest. The Court granted defendant's motion, pursuant to Rule 403.

Prior to trial, defendant made an unopposed, oral motion to exclude mention that the bullets in the charged firearm had hollow points. The Court granted the motion.

B.   Testimony of Special Agent Michael Gurney

   1.   Surveillance on May 25, 2007

At trial, the United States called as a witness FBI Special Agent Michael Gurney. Agent Gurney testified, among other things, about his surveillance observations of defendant at the Wells Fargo Bank in Sunnyvale on May 30. He concluded from these observations that defendant was preparing to rob the bank that day. The government's theory of the case, which counsel argued explicitly during closing arguments, was that defendant was preparing to rob the Wells Fargo Bank on May 30, which gave defendant a motive for possessing a firearm that day.

On direct examination of Agent Gurney, the only surveillance evidence the government elicited concerned May 30. During cross-examination, though, defendant's counsel raised the issue of Agent Gurney's surveillance of defendant on prior days. Gurney Transcript ("Tr.") at 41:21-23. By addressing the prior days' surveillance, defendant's counsel sought to suggest an absence of evidence that defendant was in fact casing banks. Most significantly, defendant's counsel asked the following questions about Agent Gurney's surveillance observations:

   **Q**   Now, you participated in surveillance on the 26th of May of Mr. Johnson,

U.S. OPP. TO MOT. FOR ACQUITTAL OR FOR NEW TRIAL
CR 07-0371 MJJ                                    2

1                    correct?

2          ***

3     **A**     Correct.

4     **Q**     Okay. And you saw him go by a vacuum cleaner store?

5     **A**     Correct.

6          ***

7     **Q**     And did it appear to you that he was casing that vacuum cleaner store?

8     **A**     No. I saw him remove what appeared to be a vacuum cleaner from the trunk of

9              the Mustang that he was driving, and bring it into the vacuum repair store,

10 Gurney Tr. at 42:23 to 43:12. Later in the cross-examination, defendant's counsel again

11 suggested that there was little or no evidence that defendant was preparing to rob a bank. He

12 asked a set of questions about Agent Gurney's arrest of defendant on May 30:

13    **Q**     Okay. Now, you handcuffed Mr. Johnson, patted him down, correct?

14    **A**     Yes.

15    **Q**     Did he have any weapons on him?

16    **A**     No.

17    **Q**     Any contraband?

18    **A**     No.

19    **Q**     Anything that suggested, in itself, that he was plotting to rob this bank?

20    **A**     No.

21 Id. at 48:6-15.

22         When the cross-examination ended, the United States sought a sidebar conference. We

23 pointed out that defendant's counsel was selectively addressing pieces of the surveillance in an

24 effort to suggest a lack of further evidence that defendant was casing banks. We noted that the

25 Court had previously excluded surveillance evidence of defendant visiting numerous banks on

26 May 25 – precisely the sort of additional "casing" evidence that defendant's counsel had

27 suggested did not exist. We asked the Court to admit the May 25 surveillance evidence in light

28 of the questions posed to Agent Gurney by defendant's counsel. The Court agreed. On redirect,

the United States introduced the May 25 surveillance evidence, and Agent Gurney testified about seeing defendant visit numerous banks that day.

### 2. Hollow-Point Bullets

During his direct testimony, Agent Gurney briefly mentioned that the charged firearm was loaded with hollow-point bullets. Defendant's counsel moved to strike that reference in light of the Court's earlier ruling. The Court granted the motion to strike and instructed the jury not to consider the reference to the hollow-point bullets, stating: "Jury is admonished to treat that answer as if you never heard it." Gurney Tr. at 33:3-4. Later, outside the jury's presence, after appropriately expressing its displeasure at the reference to the hollow-point bullets, the Court said: "I don't think there's any prejudice in a way that affects the trial." Gurney Tr. at 38:25 to 39:1. Defendant's counsel did not disagree and did not move for a mistrial. Moments later, after further discussion about the hollow-point bullets reference, the Court asked: "Anything else?" Defendant's counsel replied: "No, Your Honor." Gurney Tr. at 39:19-20.

### C. Testimony of Special Agent Brian Guy

The next day, the government called FBI Special Agent Brian Guy as a witness. On cross-examination, defendant's counsel asked a series of questions about what Agent Guy did not find when the FBI searched defendant's apartment on the day of his arrest. He asked whether Agent Guy found a gun, or ammunition, or a bank robbery kit, or ski masks, or gloves. Guy Tr. at 10:13-15, 15:13-17, 16:18-21. He asked a second time whether Agent Guy found any firearms or weapons. Id. at 16:22 to 17:1. Agent Guy replied in the negative to each question.

After the cross-examination, the United States again sought a sidebar conference. We observed that defendant's counsel was suggesting, through his line of questioning, that the FBI had failed to find evidence of bank robbery preparations in defendant's apartment. We noted that a handwritten list of bank addresses is just such evidence, and we asked the Court to reverse its previous exclusion of that list in light of defendant's line of questioning. The Court agreed. On redirect, the United States introduced the list of bank addresses.

## ARGUMENT

On a Rule 29 motion for judgment of acquittal, "[t]he relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Alarcon-Simi</u>, 300 F.3d 1172, 1176 (9th Cir. 2002) (emphasis in original; internal quotation marks omitted). "[A] district court must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." <u>Id.</u> (citation omitted in original). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." <u>United States v. Reyes-Alvarado</u>, 963 F.2d 1184, 1188 (9th Cir. 1992). When reviewing the sufficiency of the evidence in response to a Rule 29 motion, a court "must assume that the evidence at trial was properly admitted." <u>United States v. Freeman</u>, 498 F.3d 893, 908 (9th Cir. 2007) (quoting <u>United States Vizcarra-Martinez</u>, 66 F.3d 1006, 1009 (9th Cir. 1995)).

Rule 33 allows a trial judge to vacate a judgment and order a new trial in the interest of justice. A motion for a new trial should be granted only in those exceptional circumstances in which the evidence preponderates heavily against the verdict. <u>United States v. Pimentel</u>, 654 F.2d 538, 545 (9th Cir. 1981).

I.    <u>The Court Properly Admitted the List of Bank Addresses and the Surveillance Evidence.</u>

It was proper for the Court to admit the list of bank addresses and the surveillance evidence from May 25. The evidence surely was relevant, as it tended to show preparation to rob a bank and, hence, a motive by defendant to possess a firearm. Since the evidence was relevant, the only possible ground for excluding it would be pursuant to the balancing test of Rule 403. But Rule 403 "is 'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.'" <u>United States v. Mende</u>, 43 F.3d 1298, 1302 (9th Cir. 1995) (quoting <u>United States v. Patterson</u>, 819 F.2d 1495, 1505 (9th Cir. 1987)). Moreover, Rule 403 and Ninth Circuit caselaw require that any unfair prejudice <u>substantially</u> outweigh the probative value of the evidence in order for the evidence to be excluded. <u>See</u> Fed. R. Evid. 403; <u>United States v. Bailleaux</u>, 685 F.2d 1105, 1111 (9th Cir. 1982).

In the wake of defendant's counsel's cross-examinations, defendant cannot carry his burden of showing that unfair prejudice substantially outweighed the probative value of the May

1  25 surveillance evidence and the list of bank addresses.  Indeed, failing to admit the evidence
2  would have caused unfair prejudice to the United States, since defendant's counsel's questions
3  on cross-examination left misleading impressions about where the surveilling agents had
4  observed defendant and about what they had found in his apartment.  Defendant's cross-
5  examination of Agent Gurney left the misleading impression that the FBI had observed
6  defendant only at a series of innocuous locations, such as a vacuum cleaner store.  To correct this
7  mis-impression, the Court properly allowed the government to tell the jury, through Agent
8  Gurney, that the FBI had observed defendant, less than a week before his arrest, visit roughly a
9  half dozen banks – hardly a series of innocuous locations, given the rest of the evidence in the
10 case.  Similarly, defendant's cross-examination of Agent Guy left the misleading impression that
11 the FBI found no evidence in defendant's apartment that showed defendant's preparations to rob
12 banks, when in fact the list of bank addresses showed the kind of preparation that would give a
13 person the motive to possess a loaded firearm.  The Ninth Circuit has held that the government
14 may "introduce otherwise excludable testimony when the defendant 'opens the door' by
15 introducing potentially misleading testimony."  United States v. Beltran-Rios, 878 F.2d 1208,
16 1212 (9th Cir. 1989).  Since defendant's cross-examination created potentially misleading
17 testimony, the Court's decision to admit the disputed testimony was proper.
18        As described above (at 5), a Rule 29 motion does not allow a defendant to re-litigate
19 evidentiary rulings.  Rather, a court must evaluate a Rule 29 motion based on the evidence that
20 was admitted, not based only on the evidence that defendant would have like to have been
21 admitted.  Nor did the Court's entirely appropriate evidentiary rulings yield the kind of
22 exceptional circumstance in which the evidence preponderates heavily against the verdict and
23 which thus might warrant the grant of a motion for a new trial under Rule 33.  For all the above
24 reasons, and especially because the Court's evidentiary rulings were warranted by defendant's
25 counsel's opening of the door on cross-examination, the Court should deny defendant's motion.
26 II.    Defendant's Claims of Ineffective Assistance are Baseless and Do Not Warrant
          Overturning the Jury's Verdict.
27
        Defendant argues in the alternative that his counsel's opening the door to the previously
28

1  excluded evidence constituted ineffective assistance that warrants voiding the jury's verdict.
2  Defendant cites no case authority for the proposition that either a Rule 29 motion or a Rule 33
3  motion is an appropriate vehicle for raising an ineffective-assistance claim. In any event,
4  defendant's ineffective-assistance arguments fail on the merits and should be rejected.

5  To prevail on a claim of ineffective assistance, a defendant must show both that his
6  counsel's performance was deficient and that the deficiency prejudiced the defense. Wiggins v.
7  Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).
8  To establish deficient performance by counsel, a defendant "must demonstrate that counsel's
9  representation 'fell below an objective standard of reasonableness.'" Id. (citing Strickland, 466
10 U.S. at 688). To demonstrate prejudice, the defendant must show that "there is a reasonable
11 probability that, but for counsel's unprofessional errors, the result of the proceeding would have
12 been different." Strickland, 466 U.S. at 694. Defendant bears the burden of satisfying both
13 prongs of the test. United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995)

14 Strickland, establishes "a strong presumption that counsel's performance falls within the
15 wide range of professional assistance; that is, the defendant must overcome the presumption that,
16 under the circumstances, the challenged action might be considered sound trial strategy." Id.
17 Thus, the defendant "bears the burden of proving that defense counsel's assistance was
18 unreasonable under prevailing professional norms and that the challenged action was not sound
19 strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at
20 688-89). Moreover, the reasonableness of defense counsel's performance must be evaluated
21 from defense counsel's perspective at the time of the alleged error and in consideration of the
22 totality of the circumstances. Strickland, 466 U.S. at 689. To counteract the unfair influence of
23 hindsight, "[j]udical scrutiny of counsel's performance must be highly deferential." Id. A
24 defendant must show a reasonable probability that, but for defense counsel's deficient conduct,
25 the result of the case would have been different. A reasonable probability is a probability
26 sufficient to undermine confidence in the outcome. Id. at 694.

27 Defendant's ineffective-assistance claim fails under both the competence and prejudice
28 prongs of the Strickland test. As the Ninth Circuit has held, "we do not judge counsel's actions

through the twenty-twenty lens of hindsight, [citation omitted], and recognize there are many different reasonable ways to try a case." Brown v. Ornoski, No. 05-99008, 2007 WL 2713113 (9th Cir. Sept. 19, 2007). It was a reasonable trial tactic for defendant's counsel to suggest that defendant was not preparing to rob a bank, and it was practically impossible for him to do so without addressing the surveillance evidence and the evidence that was and was not found in defendant's apartment. Under Strickland, courts "must defer to trial counsel's strategic decisions." Cornell v. Ryan, 465 F.3d 1006, 1015 (9th Cir. 2006). Particularly in light of the highly deferential standard that applies to reviewing counsel's conduct, counsel's questions on cross-examination do not constitute deficient performance within the meaning of the first prong of the Strickland test.

Defendant also fails to satisfy the prejudice prong of the Strickland test. Beyond the May 25 surveillance evidence and the list of bank addresses, there was strong evidence that defendant possessed the charged firearm and had a motive to possess it. That evidence included defendant's repeated visits to the same Wells Fargo Bank in Sunnyvale in the days leading up to the arrest; the discovery of the gun and a mask closely tied to defendant in a bag located at his feet; and inculpatory statements made by defendant on the morning after his arrest. Because of this substantial evidence, defendant cannot carry his burden of showing that the jury verdict would have been different but for his counsel opening the door to admission of the additional evidence. For all these reasons, the Court should reject defendant's claim of ineffective assistance.

III.   The Brief Reference to Hollow-Point Bullets Does Not Warrant a New Trial.

The brief reference by Agent Gurney to the hollow-point bullets loaded in the gun does not justify a new trial. First, the reference caused no meaningful prejudice. The bullets were not a significant issue in the case, and there was only one, exceedingly brief reference to them. Shortly after the reference, outside the jury's presence, the Court said, "I don't think there's any prejudice in a way that affects the trial," Gurney Tr. at 38:25 to 39:1, and defendant neither disagreed nor requested a mistrial. "To determine the prejudice, we compare the probative force of the inadmissible evidence with that of the admissible evidence that supports the verdict. The

trial judge's determination of the prejudicial impact of evidence must be accorded deference." United States v Nolan, 700 F.2d 479, 485 (9th Cir. 1983). Under these criteria, and in light of the strength of the government's evidence against defendant, there was little or no prejudice from the brief reference to the bullets.

Second, any conceivable prejudice was cured by the Court's immediate instruction to the jury to "treat that answer as if you never heard it." Gurney Tr. at 33:3-4. Courts presume that juries follow curative instructions. United States v. Serrano, No. CR 07-0212 WHA, 2007 WL 2990474, at *7 (N.D. Cal. Oct. 11, 2007). Defendant's conculsory claim that the "prejudice" caused by the bullets reference "could not be undone by a curative instruction," Def. Mot. at 6, is wholly insufficient to defeat this presumption.

IV.   Defendant's Claim of Insufficient Evidence is Baseless.

Finally, defendant raises a general argument under Rule 29 that the evidence at trial was insufficient to support a guilty verdict. This argument is without basis and should be rejected.

The charged crime consisted of three elements: knowing possession, interstate commerce, and prior felony conviction. Defendant stipulated to the prior felony conviction and, by the end of trial, did not contest the interstate commerce element.[1] Thus, the only issue in dispute was whether defendant knowingly possessed the charged gun.

The record contains extensive evidence from which a rational jury could conclude, beyond a reasonable doubt, that defendant knowingly possessed the gun. The gun was found in a bag that rested at defendant's feet in the vehicle in which he was riding. In the same bag was a Halloween-style mask. A twin of that mask was found later the same day in a bag in defendant's apartment, along with a receipt for the purchase of two masks. There was extensive evidence from which a jury could conclude that defendant was preparing to rob a bank, which the jury could conclude gave him a motive to possess the gun. That evidence included surveillance evidence of defendant casing banks, the list of bank addresses found in his apartment, the fact

---

[1] In any event, the United States introduced extensive documentary evidence and testimony from two witnesses which showed that the charged firearm had been shipped across state lines on two occasions.

1  that he was wearing a hooded sweatshirt on a warm day, and the fact that the bag at his feet
2  contained not just a gun and a mask but also gloves, a cap, and a holster.  Finally,
3  the jury heard testimony from two FBI agents about statements defendant made on the morning
4  after his arrest.  A rational jury could conclude that these statements involved defendant musing
5  about whether he should have shot the gun at the moment of his arrest the previous day.  From
6  these statements, a jury could conclude that defendant possessed the gun.  Viewing this evidence
7  in the light most favorable to the prosecution, as the Court must, there is more than enough
8  evidence to support the verdict in this case.

9  Defendant claims "[t]here was no direct evidence that [defendant] ever had dominion and
10 control of the gun ... ." Def. Mot. at 6.  This claim is factually inaccurate, since the location of
11 the bag (which contained the gun) at defendant's feet surely constitutes "direct" evidence of
12 defendant's dominion and control over the gun.  But even if all the evidence introduced in the
13 case were deemed indirect or circumstantial, such evidence is just as valid as direct evidence and
14 is sufficient to sustain a verdict.  Defendant also complains about the absence of evidence such
15 as fingerprint or DNA matches or a witness who saw defendant carry the bag.  But the evidence
16 that was not introduced does not matter here.  What does matter is the evidence that was
17 presented to the jury.  Because that admitted evidence was sufficient for the jury to conclude,
18 beyond a reasonable doubt, that defendant knowingly possessed the charged firearm, the Court
19 should deny defendant's motion for a judgment of acquittal.

## CONCLUSION

For the reasons above, the United States respectfully asks the Court to deny defendant's motion for judgment of acquittal or for a new trial.

DATED: October 18, 2007                    Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney


_____/s/_____
ANDREW P. CAPUTO
TRACIE L. BROWN
Assistant United States Attorneys