JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

ANDREW P. CAPUTO (CSBN 203655)
TRACIE L. BROWN (CSBN 188349)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7004
   FAX: (415) 436-7234
   Email: andrew.caputo@usdoj.gov
   Email: tracie.brown@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-0371 MJJ |
|     Plaintiff, ) | UNITED STATES' SENTENCING MEMORANDUM |
|     v. ) | |
| FREDERICK LIM JOHNSON, ) | Date: January 24, 2008<br>Time: 2:00 p.m. |
|     Defendant. ) | |

U.S. SENTENCING MEMO.
CR 07-0371 MJJ

Defendant Frederick Lim Johnson was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He now appears for sentencing.[1] Because defendant has three previous convictions for violent felonies, he faces a mandatory minimum prison sentence of 15 years under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). For the reasons explained below, the United States respectfully asks the Court to sentence defendant to 235 months imprisonment, five years supervised release, and a $100 special assessment.

## I.  FACTS

A.  The Offense Conduct.

A group of men robbed eight Bay Area banks between February 24, 2007, and May 14, 2007. Multiple men entered each bank with their faces usually concealed behind costume masks. The men were armed with guns. One robber controlled the lobby while the remaining robber(s) vaulted the teller counter and took money from teller drawers. Presentence Report ("PSR") ¶ 6.

Federal Bureau of Investigation ("FBI") agents suspected defendant Frederick Lim Johnson of involvement in the robberies and began surveilling him. On May 25, 2007, agents observed defendant as he drove to and around numerous banks in Milpitas, San Jose, and Sunnyvale. Defendant's pattern of movements led the agents to believe he was scouting the banks for robbery. The next day, defendant visited three different banks, including the Wells Fargo Bank located at 1202 East Arques Avenue in Sunnyvale ("the Wells Fargo Bank"). Defendant visited the Wells Fargo Bank again subsequently. Each time he moved about in a manner consistent with scouting the bank for robbery. During his visits, the agents did not see him use an ATM machine or enter the bank to undertake a transaction. Instead, on various visits, he entered the bank parking lot, drove around the lot, approached the bank entrances by car, stopped or parked, and drove away from the bank through adjoining parking lots. Id. ¶ 7.

On May 30, defendant drove to Sunnyvale from his home in Redwood City. As he neared the area of the Wells Fargo Bank he previously had scouted, he entered a parking lot on

---

[1] Defendant has filed a motion for judgment of acquittal or for a new trial. That motion is pending.

U.S. SENTENCING MEMO.
CR 07-0371 MJJ                                                  1

1  Titan Way that is located approximately 200 yards from the bank.  A white sport utility vehicle
2  ("SUV"), which the agents had observed driving in tandem with defendant and which was driven
3  by Edward Kang, entered the same parking lot.  Defendant parked his car in the Titan Way lot
4  with the nose of the car facing out, then got out of his car.  He walked across the parking lot,
5  carrying a brown tote bag, and entered Kang's SUV.  Kang then drove to the nearby Wells Fargo
6  Bank that defendant had appeared to case in previous days.  During this drive, defendant was
7  seen putting on a hooded sweatshirt.  Kang and defendant drove into the Wells Fargo Bank
8  parking lot, drove around the lot, then subsequently drove out.  Minutes later they returned to the
9  same bank parking lot and drove around the lot again.  They stopped for several moments at the
10 bank's entrance, drove back around the lot again, and then left the bank parking lot for the
11 second time.  They then proceeded back to the Titan Way parking lot and parked a few spaces
12 away from where defendant had left his car.  At this point, the FBI stopped the vehicle and
13 ordered defendant and Kang out of the SUV.  On the front passenger floorboard, at the feet of
14 where defendant had just been sitting, the agents found the brown tote bag.  It contained a loaded
15 .380 semi-automatic handgun, a flesh-colored face mask, a pair of Nike batting gloves, a dark
16 blue knit cap, and a holster.  Id. ¶¶ 8-9.
17      A search of defendant's apartment later that same day revealed a bag containing a twin
18 mask to the one found in the brown tote bag, along with a receipt for the recent purchase of two
19 masks.  The agents also found in defendant's apartment a list of bank addresses.  As he was
20 being transported to the federal courthouse the following morning, defendant said to the FBI
21 agents transporting him: "Man, I shouldn't be here right now.  You guys should've shot me
22 yesterday.  I would've gone for it, but I didn't want Edward to get hurt."  The agents understood
23 defendant to be saying that he would have shot at the agents who arrested him the previous day
24 had Kang not been present.  Johnson later amended this statement and assured the agents he
25 would not have shot at them the previous day, saying, "I'm not a shooter."  Id. ¶ 11.
26 B.    Proceedings In This Case.
27      A grand jury returned a single-count indictment charging defendant with possessing the
28 gun found in the bag at his feet in the white SUV on May 30, 2007.  Defendant entered a plea of

U.S. SENTENCING MEMO.
CR 07-0371 MJJ                              2

not guilty and proceeded to trial. The trial jury returned a guilty verdict. Id. ¶¶ 1-2.

C.     Defendant's Prior Criminal Record.

Defendant has an extensive prior criminal record marked by numerous robbery and gun offenses. In 1993, at the age of 22, defendant robbed a woman by pointing a gun at her chest and ordering her to hand over her purse. Id. ¶ 36. For this offense he was convicted in San Francisco County Superior Court of second degree robbery, in violation of Cal. Penal Code § 212.5(b), and was sentenced to a six-month jail term and to three years probation. Id.; Exhibits A and B (attached). The very next year, while still on probation for the 1993 armed robbery, defendant was convicted in state court of being a felon in possession of a firearm, after police investigating a bank robbery (in which defendant apparently was a suspect) found a loaded .357 revolver and 31 rounds of ammunition at defendant's residence. Id. ¶ 37. He was sentenced in October 1994 to six months in jail and three years probation. Id.

A month after being sentenced on his 1994 felon-in-possession conviction, defendant robbed a Bank of America in the Richmond District of San Francisco. Id. ¶ 38. During the course of the robbery, defendant waved what appeared to be a handgun at the patrons of the bank. Id. Less than three weeks later, defendant robbed another Bank of America, this one in San Francisco's Sunset District. Id. Again the robbers were armed, and again one of the robbers pointed a gun at bank patrons and ordered them to get down on the floor. Id.

Defendant was arrested after the second of these bank robberies and was charged in federal court with armed bank robbery and conspiracy to commit armed bank robbery. Id. He pled guilty to one of the bank robbery counts and went to trial on the other and on the conspiracy count. Exhibit C at 1. The trial jury returned guilty verdicts. Id. In June 1996, Judge Lynch of this court sentenced defendant to 92 months imprisonment followed by five years supervised release. Id. Defendant was released from prison in August 2001 after serving this sentence. Id.

Less than six months after his release from prison, and while on supervised release, defendant began a string of two-dozen new bank robberies. This string of robberies began either in November or December of 2001, according to an interview defendant subsequently gave to the FBI, and continued until defendant was arrested in April 2003 on the day of the 25th and final

robbery in this string. Exhibit D (FBI report of May 2003 interview of defendant) at 1; PSR ¶¶ 39, 43-44. In each of these robberies, which took place at the rate of more than one per month over 16 or 17 months, defendant and/or his accomplices were armed. Exhibit D. In at least one of the robberies, as discussed in more detail below, defendant assaulted a defenseless bank teller and broke her nose. Id. at 6; PSR ¶ 43.

After being arrested in April 2003, defendant pled guilty to seven counts of armed bank robbery and to a single count of conspiracy to commit armed bank robbery. PSR ¶ 39; Exhibit E at 1. Judge Breyer of this court sentenced him to 51 months in prison, followed by four years of supervised release. PSR ¶ 39; Exhibit E at 2-3. He was released from Bureau of Prisons custody in January 2007, according to the Bureau of Prisons website at bop.gov. The very next month, on February 24, 2007, the first in a new string of eight armed, takeover bank robberies occurred in the Bay Area. The technique in these robberies was the same as in defendant's previous robberies, and defendant is believed to have committed each of them, though he has not yet been charged in these 2007 robberies. PSR ¶ 6.

## II. ARGUMENT

Defendant is a threat to public safety. Since the age of 22 he has been under arrest, in prison, or under court supervision without any interruption. Despite that fact, defendant has robbed dozens of banks, committed additional robberies, and illegally possessed loaded guns on multiple occasions. All of these criminal acts have occurred during his relatively brief periods of time between incarcerations and while he was on either probation or supervised release. His dozens of bank robberies have all been armed, and during at least one robbery defendant assaulted a defenseless bank teller, breaking her nose. In the instant case, defendant plainly was preparing to rob the Wells Fargo Bank in Sunnyvale, and he was carrying a loaded handgun in order to do so. Given his extensive criminal record and his demonstrated willingness to harm innocent people during his bank robberies, his illegal possession of a loaded gun here presented a serious danger to innocent people. Defendant is a chronic recidivist, and he seems very likely to commit the same crime again if he is released from prison anytime soon. For all these reasons, the United States respectfully asks the Court to sentence defendant to 235 months imprisonment,

U.S. SENTENCING MEMO.
CR 07-0371 MJJ                                                4

five years supervised release, and a $100 special assessment.

A.      The Appropriate Guidelines Sentencing Range is 210-262 Months.

Because of his prior criminal record, defendant is subject to a minimum prison sentence of 15 years, pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e). His status as an armed career criminal means that the applicable offense level under the sentencing guidelines is 33. The probation office has concluded that defendant should be placed in criminal history category IV, which, at offense level 33, would generate a guidelines sentencing range of 188-235 months. The United States respectfully submits that criminal history category IV substantially under-represents the seriousness of defendant's criminal history and the likelihood that he will commit other crimes. Accordingly, an upward departure to criminal history category V is warranted here. A criminal history category of V and an offense level of 33 generates a sentencing range of 210-262 months.

  1.    Defendant is Subject to a Minimum Prison Sentence of 15 Years Under the Armed Career Criminal Act.

The Armed Career Criminal Act provides that a person who has three prior convictions for a violent felony or a serious drug offense "shall be ... imprisoned not less than fifteen years" for a violation of 18 U.S.C. § 922(g). 18 U.S.C. § 922(e)(1). Defendant's prior felony convictions for armed bank robbery and for second degree robbery all qualify as violent felonies. Accordingly, defendant is an armed career criminal and must serve at least 15 years in prison.

    a.      Armed Bank Robbery Qualifies As A Violent Felony.

Defendant has been convicted on two separate occasions of multiple counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). PSR ¶¶ 38-39; Exhibits C, E. The Armed Career Criminal Act defines the term violent felony to include any crime punishable by more than one year in prison that "has as an element the use, attempted use, or threatened use of physical force against the person of another ..." 18 U.S.C. § 924(e)(2)(B)(i). Armed bank robbery is punishable by more than one year in prison – specifically, by up to 25 years in prison. 18 U.S.C. § 2213(d). It also has as an element the use of physical force against a person, since it requires that the defendant use force and violence or intimidation in taking money from the bank

U.S. SENTENCING MEMO.
CR 07-0371 MJJ                                  5

and that the defendant either assault or put in jeopardy the life of a person by use of a dangerous weapon or device.  Id. § 2113(a), (d).  See also 9th Cir. Crim. Jury Instr. 8.131 (elements of crime of bank robbery under 18 U.S.C. § 2113); cf. United States v. Avery, 15 F.3d 816, 818 (9th Cir. 1994) ("[i]t is settled that conviction under [18 U.S.C.] § 2113(a) qualifies as a crime of violence" under the sentencing guidelines"); United States v. Selfa, 918 F.2d 749, 751 (9th Cir. 1990) ("persons convicted of robbing a bank 'by force and violence' or 'intimidation' under 18 U.S.C. § 2113(a) have been convicted of a 'crime of violence'" under the sentencing guidelines).  Thus, defendant's prior convictions for armed bank robbery qualify as violent felonies for purposes of the Armed Career Criminal Act.

In addition, defendant's prior bank robbery convictions qualify as violent felonies for purposes of the Armed Career Criminal Act on the alternative ground that armed bank robbery "involves conduct that presents a serious potential risk of injury to another ..."  18 U.S.C. § 924(e)(2)(B)(ii) (alternative definition of "violent felony").  Plainly, robbing a bank (especially while armed) presents a serious potential risk of injury to bank tellers, bank customers, security guards, and law enforcement officers who might respond to a report of the robbery.  Cf. United States v. Martinez-Jimenez, 864 F.2d 664, 666-68 (9th Cir. 1989) (discussing significant risk of harm to bank robbery victims where robber carries only a toy gun).  Under either of the Armed Career Criminal Act's definitions, then, armed bank robbery qualifies as a violent felony.

b.   Second Degree Robbery Also Qualifies as a Violent Felony.

Defendant's prior conviction for second degree robbery under California law also qualifies as a violent felony.  It qualifies as a felony since it is punishable by imprisonment in state prison for between two and five years.  Cal. Penal Code § 213(a)(2).  It also qualifies as a violent under either of the Armed Career Criminal Act's definitions of that term.  It "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), since the crime is defined as the taking of property from a person "accomplished by means of force or fear."  Cal. Penal Code § 211.  See United States v. David H., 29 F.3d 489, 494 (9th Cir. 1994) ("a violation of California Penal Code § 211 includes the element of threatened force against the person of another") (internal quotation marks omitted).  It

U.S. SENTENCING MEMO.
CR 07-0371 MJJ                                      6

also qualifies under the alternative definition of a violent felony since, as the Ninth Circuit has held, a violation of Cal. Penal Code § 211, "by its very nature, involves a substantial risk that physical force against the person of another may be used." Id. (internal quotation marks omitted).  See also United States v. McDougherty, 920 F.2d 569, 574 (9th Cir. 1990) (robbery as defined by California law "is certainly the kind of crime that presents a serious risk that physical force may be used").  Under either definition, then, defendant's conviction for second degree robbery qualifies as a violent felony under the Armed Career Criminal Act.

### 2. The Applicable Offense Level Under the Guidelines is 33.

Because defendant qualifies as an armed career criminal in light of these prior convictions for violent felonies, the sentencing guidelines assign an offense level of 33 to defendant's crime. U.S. Sentencing Guidelines Manual § 4B1.4(b)(3)(B); PSR ¶ 27.  Defendant receives no downward adjustment for acceptance of responsibility, since he went to trial and has failed to take any responsibility for possessing the firearm charged in the indictment.  Accordingly, defendant's total offense level under the sentencing guidelines is 33.  PSR ¶ 29.

### 3. Defendant Should Be Placed in Criminal History Category V.

The PSR properly calculates that, under the normal operation of the sentencing guidelines, defendant receives only six criminal history points for his numerous prior convictions: three points for his 1995 bank robbery convictions, and three points for his 2003 bank robbery convictions.  PSR ¶¶ 35-40.  When combined with the three additional criminal history points defendant receives for committing the instant offense while on supervised release and less than two years following release from prison, defendant has a total of nine criminal history points, which under normal circumstances would place him in criminal history category IV.  Id. ¶¶ 41-42.

The sentencing guidelines provide for an upward adjustment in criminal history category where a criminal history category substantially under-represents the seriousness of defendant's criminal history or the likelihood that he will commit other crimes.  U.S. Sentencing Guidelines Manual § 4A1.3(a)(1).  This is just such a case.  Assessing only six criminal history points for defendant's roster of prior convictions is inadequate for two main reasons.

1       First, assessing only three points for each of defendant's two groups of prior bank robbery
2  convictions fails to account for the seriousness of defendant's actual conduct in the robberies.
3  His 2003 convictions for seven counts of armed bank robbery and one count of conspiracy
4  receive only three criminal history points under the normal operation of the guidelines, despite
5  the fact that defendant's actual conduct involved robbing two dozen banks in a notably violent
6  fashion. See Exhibit D; PSR ¶ 43-44. The guidelines provide that an upward departure based on
7  inadequacy of criminal history category may be warranted where a defendant has received
8  "[p]rior sentence(s) of substantially more than one year imposed as a result of independent
9  crimes committed on different occasions." U.S. Sentencing Guidelines Manual §
10 4A1.3(a)(2)(B). This is just such a case. To take adequate account of the scale of defendant's
11 prior bank robberies, an upward adjustment in criminal history category is necessary here.
12      Second, defendant's convictions for the crimes he committed prior to his bank robbery
13 convictions receive no criminal history points at all under the normal operation of the guidelines,
14 since the guidelines consider those convictions too old to count. But these robbery and felon-in-
15 possession convictions from 1993 and 1994 are old not because defendant has since mended his
16 ways and abandoned his criminal behavior. They are old because defendant has spent most of his
17 time since those convictions in prison for committing bank robberies. Since the age of these
18 prior convictions in no way signals a fresh start by defendant, as the time that has elapsed since
19 them has been filled by a nearly unbroken chain of new criminal behavior by defendant, the need
20 to take account of these prior convictions provides an additional justification for adjusting
21 defendant's criminal history category upward.
22      Under the normal operation of the guidelines, defendant has nine criminal history points
23 in total. PSR ¶ 42. A single additional criminal history point would be enough to move
24 defendant from criminal history category IV to criminal history category V under the guidelines.
25 U.S. Sentencing Guidelines Manual ch. 5, pt. A. For the reasons specified above, a modest
26 upward adjustment in criminal history category is warranted here, and defendant should be
27 placed in criminal history category V. Significantly, while the final PSR places defendant in
28 criminal history category IV using the normal operation of the guidelines, the probation office

U.S. SENTENCING MEMO.
CR 07-0371 MJJ                    8

notes that "defendant's criminal history may be more aptly represented by a criminal history category V," in light of his history as "a violent and prolific bank robber." PSR ¶ 80. We concur. In the wake of an upward adjustment to criminal history category V, defendant's guidelines sentencing range would be 210-262 months.

B.  A Sentence of 235 Months in Prison is Warranted Under the Guidelines and Reasonable In Light of the Statutory Sentencing Factors.

The United States recommends that the Court impose a sentence of 235 months in prison. If the Court grants the government's request for an upward adjustment in criminal history category, such a sentence would fall nearly in the dead center of the applicable 210-262 months guidelines range. Even if defendant were deemed to be in criminal history category IV, a 235-month sentence would fall within the applicable guidelines range of 188-235 months. It thus would "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

A sentence of 235 months, whether it is a midrange guidelines sentence at criminal history category V or a high-end guidelines sentence at criminal history category IV, is reasonable and well justified given the circumstances of the offense and of defendant's history. Defendant is a chronic bank robber. With brief exceptions measured only in months, he has been robbing people and banks for his entire adult life, except when he has been incarcerated and thus temporarily unable to walk into a bank, brandish a loaded gun, and demand that the victims give him their money. The not-insignificant prison sentences defendant has received previously have had no discernible deterrent effect, since each time he has been released from prison he has resumed his robberies with little or no delay.

By his own admission, defendant has robbed dozens of banks. See Exhibit D. On the day he was arrested here, he plainly was preparing to rob another one. If he is released from prison in the foreseeable future, it seems reasonable to expect him to rob yet another bank in short order. The only way to break this lengthy chain of criminal activity is to remove defendant from society for a good deal longer than he has ever been removed before. That is what we ask this Court to do by imposing a 235-month sentence here.

We note that defendant is not just an especially prolific bank robber. He also is an especially violent one. Many bank robbers carry an unloaded gun, or a toy gun, or no gun at all. Defendant carries a loaded gun. The only reason to do so is to be prepared to use it. The probation office's sentencing recommendation states that "in this officer's opinion, it is only a matter of time until someone is killed during one of [defendant's] bank robberies." PSR, Sentencing Recommendation at 2. The government agrees. The sentence we request here is a substantial one, and it is impossible to relish the prospect of any person being sentenced to prison for nearly 20 years. But such an outcome seems far preferable to the uncomfortably likely alternative, which is having an innocent teller, bank customer, or security guard get shot and perhaps killed when defendant next walks into a bank, pulls out a loaded gun, and points it at his victims. Lest anyone think we are speculating unduly about defendant's capacity for violence while robbing banks, we call the Court's attention to defendant's boasting description of assaulting an innocent teller during one of his bank robberies in 2003. Defendant robbed a Bank of America in Redwood City on February 8, 2003. He described the robbery to an FBI agent later that same year as follows:

> During this robbery JOHNSON hit a teller in her face[,] breaking her nose[,] because she wouldn't cooperate. JOHNSON said, "...she was playing with me!" JOHNSON also said he may have told [his accomplice] to, "...shoot the bitch!"

Exhibit D at 6.

Defendant has a serious criminal history. His offense here was yet another in a chain of violent robberies and gun crimes. A 235-month sentence would provide just punishment for this latest, serious offense. A sentence of this length seems necessary to protect the public from further crimes of the defendant. Such a sentence also would deter future criminal conduct by others. For all these reasons, a 235-month prison sentence is reasonable here and should be imposed by the Court.

### III. CONCLUSION

The United States respectfully asks the Court to sentence defendant to a term of 235 months in prison, followed by a five-year term of supervised release. A $100 special assessment is mandatory under the statute. 18 U.S.C. § 3013(a)(2)(A).

1  DATED: January 17, 2008              Respectfully submitted,

2                                        JOSEPH P. RUSSONIELLO
                                         United States Attorney
3

4
                                         _____/s/_____
5                                        ANDREW P. CAPUTO
                                         TRACIE L. BROWN
6                                        Assistant United States Attorneys

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. SENTENCING MEMO.
CR 07-0371 MJJ                          11